*132
 
 ATTORNEY DISCIPLINARY PROCEEDINGS
 

 PER CURIAM.
 

 I,This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel (“ODC”) against respondent, Francis C. Broussard, an attorney licensed to practice law in Louisiana.
 

 FORMAL CHARGES
 

 In October 2005, the ODC filed two counts of formal charges against respondent, alleging the following:
 

 Count I
 

 In September 2002, Amber and Jeffrey Balsamo retained respondent to represent them due to personal injuries received by Mr. Balsamo as a result of an automobile accident. At the initial meeting with respondent, Mr. and Mrs. Balsamo signed an attorney-client contract.
 
 [1]
 
 They also provided respondent with photographs, police reports, and medical information. Before this initial meeting concluded, respondent told Mr. and Mrs. Balsamo that he would be in touch with them. Despite numerous attempts by Mr. and Mrs. Balsamo to contact respondent, they were unable to communicate with him. Due to the lack of communication, Mr. and Mrs. Balsamo terminated respondent’s representation via certified mail on March 19, 2003. Mr. and Mrs. Balsamo then hired a new attorney, Norman Gordon, who discovered that the 12Balsamo’s lawsuit was not filed until the day before the prescription date. Respondent failed to include a loss of consortium claim on behalf of Mrs. Balsamo and their children. Further, respondent failed to take any steps to perfect service of the lawsuit on the out-of-state defendants under the Long Arm Statute, placing the Balsamo’s claim for damages in jeopardy.
 
 [2]
 
 Mr. Gordon requested, in writing, a complete copy of his clients’ file from respondent on April 2, 2003. The copy of the file respondent provided did not include the documents and photographs Mr. and Mrs. Balsamo had given to respondent. Despite a second request to respondent by Mr. and Mrs. Balsamo for the file, these items were never returned to Mr. and Mrs. Balsamo. A review of the depositions taken of the parties in the companion federal court case prior to Mr. Gordon’s representation did not disclose any participation on the part of respondent.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 (failure to act with reasonable diligence and promptness in representing a client), 1.4 (failure to communicate with a client), 1.16(d) (obligations upon termination of the representation), and 3.2 (failure to make reasonable efforts to expedite litigation).
 

 Count II
 

 On October 10, 2003, Patsy McMorris retained respondent to represent her in a
 
 *133
 
 worker’s compensation matter. At the time she hired respondent, Ms. McMorris was already receiving worker’s compensation benefits arising out of injuries she received when she fell down stairs at work. With respect to the worker’s compensation matter, there is evidence that Ms. McMor-ris forwarded her medical |sbills to respondent, who in turn faxed the bills to the worker’s compensation claims adjuster. According to Ms. McMorris, however, the bills were faxed to the claims adjuster on February 26, 2004 referencing the wrong person, presumably another of respondent’s clients. Furthermore, Ms. McMor-ris complains that respondent failed to attend a scheduled meeting between the worker’s compensation nurse and Ms. McMorris’ physician.
 

 Ms. McMorris also retained respondent in February 2004 to represent her in a claim for Social Security disability benefits. A pre-hearing order dated June 8, 2004 specifically states that it is the representative’s responsibility to ensure that the medical records are up to date and that all pertinent medical evidence has been submitted to the Office of Hearing and Appeals fourteen days prior to the date of the hearing. The hearing in Ms. McMorris’ matter was set for September 20, 2004. According to Ms. McMorris, however, respondent did not request her medical records from her treating physician, Dr. Burkett, until August 25, 2004, nor did he have evidence of her prescriptions prior to the hearing despite the fact that she provided this evidence to him one week prior to the hearing. On the day of the hearing, respondent did not have the information with him. After the hearing, Ms. McMor-ris sent a packet to the administrative law judge with all of her recent medical records and a letter explaining her disability. Ms. McMorris was ultimately awarded disability benefits. Ms. McMorris requested her Social Security file from respondent by letter dated November 3, 2004. Respondent informed her that if she wanted copies of the file, she should request it from the Social Security Administration office.
 

 On August 22, 2004, Ms. McMorris was involved in an automobile accident, and she retained respondent to represent her in that matter. Although respondent apparently agreed to pay for Ms. McMorris’ CT scan, when she appeared at the |4hospitaI for the test, she was told that respondent had refused to pay for it. Apparently, the hospital employee announced that Ms. McMorris could wait until the check arrived for payment of the test. Ms. McMorris complains that she was humiliated by respondent’s failure to properly handle this matter and that she left the hospital crying.
 

 The ODC alleged that respondent’s conduct violated the following provisions of the Rules of Professional Conduct: Rules 1.3 and 1.16(d).
 

 DISCIPLINARY PROCEEDINGS
 

 The formal charges were served upon respondent by certified mail in October 2005. Respondent filed an answer to the formal charges denying any misconduct, and he supplemented his answer with an “Additional Response to Charges” in which he briefly elaborated on his position regarding the allegations. The matter was then set for a hearing in February 2006. The hearing was reset and continued on several occasions, and in October 2008, respondent and the ODC informed the hearing committee that they wished to submit this matter on stipulations and briefs. On December 2, 2008, the parties filed a joint stipulation agreeing to the facts as set forth in the formal charges. Respondent also stipulated that he violated the Rules of Professional Conduct as charged. The parties further stipulated to
 
 *134
 
 the introduction of exhibits, stipulated to the applicable aggravating and mitigating factors, and stipulated that the appropriate sanction in this case is a six-month suspension, fully deferred, subject to a one-year period of supervised probation with conditions. Accordingly, no hearing was held, and the matter was submitted to the hearing committee on the stipulations and documentary evidence only. By letter dated December 10, 2008, respondent confirmed his agreement “with the stipulations, | .^exhibits and recommended punishment,” and presented facts and argument in mitigation.
 
 [3]
 

 Heating Committee Report
 

 After considering the joint stipulations of the parties, the hearing committee agreed that respondent violated the Rules of Professional Conduct as cited. However, the committee expressed concern that respondent has been the subject of disciplinary proceedings on two prior occasions. The prior discipline includes an admonition by the disciplinary board in 1998 for engaging in improper financial transactions with his client and a fully deferred six-month suspension, subject to a one-year period of supervised probation with conditions, imposed by this court in
 
 In re: Broussard,
 
 02-1670 (La.9/30/02), 827 So.2d 1133
 
 (“Broussard
 
 7”).
 
 [4]
 
 The committee noted that respondent was still within his period of supervised probation in connection with
 
 Broussard I
 
 when at least some of the actions or non-actions complained of in Count I of the instant formal charges took place.
 
 [5]
 
 The committee further noted that the proposed discipline stipulated to by the ODC and respondent in this matter was no different than that received in
 
 Broussard I.
 
 Although the complainants in this matter were not significantly injured by respondent’s rule violations, the committee felt that the pattern of conduct demonstrated by respondent required a more significant penalty |fithan that suggested in the joint stipulation. Moreover, none of the cases cited by the ODC in the joint stipulation of proposed discipline resulted in a fully deferred suspension.
 

 Based on this reasoning, the committee declined to adopt the discipline proposed by the parties. Rather, the committee recommended that respondent be suspended from the practice of law for one year and one day, fully deferred, subject to a one-year period of supervised probation governed by the following conditions:
 

 1. Respondent shall refrain from violating any Rules of Professional Conduct;
 

 2. Respondent shall remain current with all obligations, including his bar dues, disciplinary assessments, and continuing legal education requirements;
 

 3. Respondent shall attend a session of the Ethics School offered by the Louisiana State Bar Association’s Practice
 
 *135
 
 Assistance and Improvement Committee;
 

 4. A probation monitor shall be appointed to periodically monitor respondent’s case load for conflicts of interest, as well as his compliance with all of the conditions of his probation; and
 

 5. Respondent shall pay all costs associated with these proceedings.
 

 Neither respondent nor the ODC filed an objection to the hearing committee’s recommendation.
 

 Disciplinary Board Recommendation
 

 After review, the disciplinary board noted that the hearing committee made very few independent factual findings outside of the joint stipulation, which is essentially a verbatim recitation of the formal charges and which the committee adopted as its summary of the events in this case. The board found that although the stipulations are generally supported by the record, there are several factual errors and 17a few stipulations that require additional clarification. The board corrected these errors and clarified the stipulations in its report.
 

 After a de novo review of the record, the board agreed that respondent violated Rules 1.3,1.4,1.16(d), and 3.2 in Count I of the formal charges, as stipulated. However, in Count II, the board found only that respondent violated Rule 1.16(d) by failing to return Ms. McMorris’ Social Security file. The board did not agree that respondent violated Rule 1.3, despite his stipulation. In Count II, the ODC alleged that respondent did not send recent medical records from Dr. Burkett to the administrative law judge until after Ms. McMorris’ hearing held on September 20, 2004. While this is correct, respondent requested and received medical records from Ms. McMorris’ other doctors in June 2004, pri- or to the hearing. Respondent forwarded these records to the ALJ via letters dated July 7 and 17, 2004. The records in question related to treatment Ms. McMorris received for her back and neck problems and a broken wrist, which was the reason she applied for Social Security disability benefits. On the other hand, it appears that Dr. Burkett treated Ms. McMorris for heart problems. The ruling of the ALJ granting Social Security benefits to Ms. McMorris specifically stated that the benefits were being granted because of her neck, back, and wrist problems. Respondent sent all of the pertinent medical documents regarding these problems to the ALJ well in advance of the hearing.
 

 Second, with regard to the incident involving the CT scan, respondent claimed that he sent his secretary to the hospital with a check to pay for the test, but by the time the secretary arrived, Ms. McMorris had left. According to the attorney-client contract signed by Ms. McMorris, respondent had no obligation to pay for medical treatment; he had simply agreed to pay for the CT scan as a courtesy. Finding respondent is not responsible for the rudeness of the hospital staff, the board | ^concluded that respondent did not violate Rule 1.3 in Count II of the formal charges. Rather, it appears he handled Ms. McMor-ris’ legal matters with competence and diligence until she terminated his services.
 

 Based on these findings, the board determined that respondent violated duties owed to his clients and the legal system. With regard to returning the files of Mr. Balsamo and Ms. McMorris, respondent’s conduct appears to be negligent. With regard to the delay he caused in the Balsa-mo matter, his conduct appears to be at least knowing. He caused moderate actual harm to Mr. Balsamo by failing to serve the defendants, which led to the dismissal of the lawsuit without prejudice. Although the lawsuit was reinstated, the dismissal caused an undue delay. With regard to Ms. McMorris, the board found that re
 
 *136
 
 spondent did not cause any actual injury, reasoning that even if Ms. McMorris has not received a copy of her Social Security file, her Social Security disability proceeding had been concluded in her favor at the time she requested her file. Relying on the ABA’s
 
 Standards for Imposing Lawyer Sanctions,
 
 the board determined that the baseline sanction is suspension.
 

 The board found the following aggravating factors present: prior disciplinary offenses, multiple offenses, and substantial experience in the practice of law (admitted 1986). The board determined that the mitigating factors present are: absence of a dishonest or selfish motive, remorse, and delay in the disciplinary proceeding.
 

 Turning to the issue of an appropriate sanction, the board considered
 
 In re: Brown,
 
 07-0995 (La.10/17/07), 967 So.2d 482, and
 
 In re: Jackson,
 
 02-2764 (La.4/9/03), 842 So.2d 359. In
 
 Brown,
 
 the respondent represented clients in a personal injury matter. After filing the petition in October 1997, Mr. Brown failed to ensure that the defendants were properly served. Eventually, the defendants were served in ^February 2003. They filed a motion to dismiss, but it was never heard because of difficulty in serving Mr. Brown with the motion. The court found that Mr. Brown did not have a dishonest or selfish motive and that there was little actual harm to the clients. Under the totality of the circumstances, the court observed that the matter would probably have been more appropriately considered “in a civil malpractice action rather than a disciplinary proceeding.” However, because there were violations of the Rules of Professional Conduct proven by clear and convincing evidence, and considering that Mr. Brown had a prior disciplinary offense, the court concluded that a public reprimand was appropriate.
 

 In
 
 Jackson,
 
 the respondent failed to file suit on behalf of a client before the prescriptive period expired, in violation of Rules 1.3 and 1.4. Mr. Jackson had a prior admonition involving similar misconduct. The court found that Mr. Jackson’s conduct caused actual injury to his client because the client lost his right to assert his claims. However, the court noted, as in
 
 Brown,
 
 that although “an isolated instance of such harm might be ordinarily addressed in a legal malpractice action rather than by disciplinary proceeding,” the fact that Mr. Jackson had previously been admonished for similar misconduct necessitated the imposition of discipline, specifically a six-month suspension with three months deferred.
 

 The board suggested that the instant matter falls in between
 
 Brown
 
 and
 
 Jackson.
 
 As in those cases, respondent’s neglect caused his client’s legal matter to be dismissed. However, unlike those two cases, Mr. Balsamo did not lose his cause of action entirely. Rather, his lawsuit was reinstated. Contrary to
 
 Brown
 
 and
 
 Jackson,
 
 respondent has a more significant disciplinary history. Even though his prior offenses were for misconduct that is not similar to the misconduct in this case, it is significant that he served a one-year period of supervised probation, which was [ inintended to ensure that he made corrections in his law practice so that he did not engage in additional rule violations.
 

 Based on this reasoning, the cases cited, and the absence of any serious actual harm in this matter, the board concluded that the deferred one year and one day suspension recommended by the hearing committee is too harsh, and that the sanction to which the ODC and respondent consented appears suitable. Accordingly, the board recommended that respondent be suspended from the practice of law for six months, fully deferred, subject to a one-year period
 
 *137
 
 of supervised probation governed by the same conditions as set forth by the committee. One board member dissented from the recommendation, stating that he did “not feel there was manifest error made by the hearing committee.”
 

 Although neither respondent nor the ODC filed an objection to the board’s recommendation, on November 23, 2009, we ordered briefing addressing the issue of an appropriate sanction. Both parties filed briefs in response to the court’s order.
 

 DISCUSSION
 

 Bar disciplinary matters fall within the original jurisdiction of this court. La. Const, art. V, § 5(B). Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by clear and convincing evidence.
 
 In re: Quaid,
 
 94-1316 (La.11/30/94), 646 So.2d 343;
 
 Louisiana State Bar Ass’n v. Boutall,
 
 597 So.2d 444 (La.1992). While we are not bound in any way by the findings and recommendations of the hearing committee and disciplinary board, we have held the manifest error standard is applicable to the committee’s factual findings. See
 
 In re Caulfield,
 
 96-1401 (La.11/25/96), 683 So.2d 714;
 
 In re: Pardue,
 
 93-2865 (La.3/11/94), 633 So.2d 150.
 

 | nBased upon the evidence in the record, the disciplinary board found that respondent failed to communicate with Mr. Balsa-mo, neglected his legal matter (resulting in the dismissal of his suit), and failed to release the files of Mr. Balsamo and Ms. McMorris upon request, in violation of Rules 1.3, 1.4, 1.16(d), and 3.2 of the Rules of Professional Conduct. The baseline sanction for this conduct, which was knowing in part and negligent in part, is a period of suspension.
 

 Having found evidence of professional misconduct, we now turn to a determination of the appropriate sanction for respondent’s actions. In determining a sanction, we are mindful that disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct.
 
 Louisiana State Bar Ass’n v. Reis,
 
 513 So.2d 1173 (La.1987). The discipline to be imposed depends upon the facts of each case and the seriousness of the offenses involved considered in light of any aggravating and mitigating circumstances.
 
 Louisiana State Bar Ass’n v. Whittington,
 
 459 So.2d 520 (La.1984).
 

 The aggravating factors present are pri- or disciplinary offenses, multiple offenses, a pattern of misconduct, and substantial experience in the practice of law (admitted 1986). The mitigating factors present are absence of a dishonest or selfish motive, a cooperative attitude toward the disciplinary proceeding, remorse, and delay in the disciplinary proceeding.
 

 Considering the circumstances, the board recommended that the sanction agreed to by the parties, a fully deferred six-month suspension with probation, be approved. However, the hearing committee felt that this sanction was too lenient, considering that the discipline imposed in
 
 Broussard I
 
 was a fully deferred six-month suspension with probation. We tend to agree with the hearing committee, as we are |12concerned that even after an admonition and a fully deferred suspension respondent has continued to fail in fulfilling his responsibilities as a lawyer. However, unlike the hearing committee, we do not believe that a longer period of fully deferred suspension is adequate. Rather, we find it is necessary to impose an actual period of suspension in order to impress upon respondent the importance of his duties and responsibilities to his clients.
 

 Accordingly, we will reject the disciplinary board’s recommendation and suspend
 
 *138
 
 respondent from the practice of law for one year and one day, with all but thirty days deferred, followed by a one-year period of supervised probation governed by the conditions recommended by the hearing committee. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for making the deferred portion of the suspension execu-tory, or imposing additional discipline, as appropriate.
 

 DECREE
 

 Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record and the briefs filed by the parties, it is ordered that Francis C. Broussard, Louisiana Bar Roll number 17259, be and he hereby is suspended from the practice of law for a period of one year and one day. All but thirty days of this suspension shall be deferred, subject to respondent’s successful completion of a one-year period of supervised probation governed by the conditions enumerated by the hearing committee. The probationary period shall commence from the date respondent, the ODC, and the probation monitor execute a formal probation plan. Any failure of respondent to comply with the conditions of probation, or any misconduct during the probationary period, may be grounds for 1^making the deferred portion of the suspension executory, or imposing additional discipline, as appropriate. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court’s judgment until paid.
 

 [1]
 

 . Actually, the retainer agreement in the record reflects that it is signed only by Mr. Balsa-mo.
 

 [2]
 

 . In fact, in October 2003, the petition filed by respondent on October 3, 2002 was dismissed without prejudice for failure to serve the defendants timely. The suit was thereafter reinstated.
 

 [3]
 

 . It is unclear why the matter proceeded in this fashion, rather than pursuant to a petition for consent discipline filed in this court in accordance with the provisions of Supreme Court Rule XIX, § 20.
 

 [4]
 

 . In
 
 Broussard I,
 
 respondent consented to discipline for engaging in conduct constituting a conflict of interest and for failing to disburse settlement proceeds to a client for more than one year, during which time the balance of his trust account dropped below the amount held on the client's behalf.
 

 [5]
 

 .As the disciplinary board subsequently noted in its report, the committee's finding in this regard is in error. Respondent represented Mr. Balsamo from September 26, 2002 to March 19, 2003, while he was on probation in connection with
 
 Broussard I
 
 from June 9, 2004 to August 15, 2005. However, respondent was still on probation in connection with
 
 Broussard I
 
 during the time that he failed to return Ms. McMorris' Social Security file in Count II of the instant formal charges.