# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #007

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **25th day of January, 2017**, are as follows:

**PER CURIAM**:

2016-B -1441          IN RE: FRANCIS C. BROUSSARD

Judge James T. Genovese, assigned as Justice ad hoc, sitting for Knoll, J. for oral argument.  He now sits as an elected Justice at the time this opinion is rendered.

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Francis C. Broussard, Louisiana Bar Roll number 17259, be and he hereby is disbarred, retroactive to February 26, 2014, the date of his interim suspension.  His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked.  All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

HUGHES, J., dissents with reasons.

SUPREME COURT OF LOUISIANA

NO. 2016-B-1441

IN RE: FRANCIS C. BROUSSARD

ATTORNEY DISCIPLINARY PROCEEDING

PER CURIAM*

This disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Francis C. Broussard, an attorney licensed to practice law in Louisiana. Respondent is currently on interim suspension pursuant to a joint petition filed by the parties in February 2014. *In re: Broussard*, 14-0386 (La. 2/26/14), 134 So. 3d 579.

**PRIOR DISCIPLINARY HISTORY**

Before we address the current charges, we find it helpful to review respondent's prior disciplinary history.

Respondent was admitted to the practice of law in Louisiana in 1986. In 1998, he was admonished by the disciplinary board for engaging in improper financial transactions with his client.

Thereafter, this court considered two separate disciplinary proceedings involving respondent. In 2002, we suspended respondent from the practice of law for six months, fully deferred, subject to a one-year period of supervised probation with conditions, for engaging in conduct constituting a conflict of interest and for failing to disburse settlement proceeds to a client for more than one year, during which time the balance of his trust account dropped below the amount held on the

---

* Judge James T. Genovese, assigned as Justice ad hoc, sitting for Knoll, J. for oral argument. He now sits as an elected Justice at the time this opinion is rendered.

client's behalf.  *In re: Broussard*, 02-1670 (La. 9/30/02), 827 So. 2d 1133 ("*Broussard I*").

In 2010, we suspended respondent from the practice of law for one year and one day, with all but thirty days deferred, followed by a one-year period of supervised probation with conditions, for failing to communicate with a client and neglecting his legal matter, resulting in the dismissal of his lawsuit, and failing to release the files of two clients upon request.  *In re: Broussard*, 09-1814 (La. 1/8/10), 26 So. 3d 131 ("*Broussard II*").

Against this backdrop, we now turn to a consideration of the misconduct at issue in the present proceeding.

**UNDERLYING FACTS**

In September 2012, a federal grand jury in the Western District of Louisiana, Monroe Division, returned an indictment charging respondent with four counts of making false, fictitious, or fraudulent claims to the IRS, in violation of 18 U.S.C. §§ 287 & 2.[1]  Each count related to a tax return filed by respondent for the years 2005, 2006, 2007, and 2008.  In April 2013, respondent pleaded guilty to Count Four of the indictment for the false return filed for the year 2007.  In the factual basis for the guilty plea, respondent agreed that the Government could prove the following beyond a reasonable doubt:

Respondent had his regular CPA prepare accurate tax returns for 2005, 2006, and 2007.  Respondent never filed these returns with the IRS but did present them to various financial institutions in support of his effort to obtain financing.  He also

---

[1] 18 U.S.C. § 287 makes it a crime to knowingly make a false or fraudulent claim against any department or agency of the United States.  The elements of the crime are (1) that the defendant knowingly presented or caused to be presented to an agency of the United States a false or fraudulent claim against the United States; (2) that the defendant knew the claim was false or fraudulent; and (3) that the false or fraudulent claim was material.  A claim is "material" if it has a natural tendency to influence, or is capable of influencing, the agency to which it was addressed.  It is not necessary to show, however, that the government agency was in fact deceived or misled.

2

used them to calculate his tax liability for purposes of a community property partition agreement as a part of his divorce in 2008. In that agreement, he reported a tax liability for 2005, 2006, and 2007.

In 2009, respondent went to a different tax preparer in Monroe to have his personal tax returns prepared for 2005, 2006, 2007, and 2008. Respondent brought the tax preparer numbers on a piece of paper and federal income tax returns already prepared. Respondent told the tax preparer the numbers needed to go on Forms 1099-OID and then on Schedule B, Interest Income. Respondent's fraudulent claim is based on original issue discount (OID) interest income. Respondent falsely claimed that he received Forms 1099-OID from Community Trust Bank, Ouachita Independent Bank, JP Morgan Chase Bank, and Bank of America. All four financial institutions deny issuing the Forms 1099-OID that respondent attached to his tax returns.

The false returns claimed refunds totaling $9,783,693. The following is a breakdown by year of the refunds claimed by respondent:

| Tax Year | Method of Submission | Date of Submission to the IRS | Refund Amount Claimed |
|----------|----------------------|-------------------------------|------------------------|
| 2008 | Electronic | January 12, 2009 | $2,026,100 |
| 2007 | Mail | March 16, 2009 | $3,149,163 |
| 2006 | Mail | February 5, 2009 | $2,293,007 |
| 2005 | Mail | January 20, 2009 | $2,315,423 |

In February 2009, respondent was interviewed by agents with IRS Criminal Investigations regarding the tax returns he had submitted for the 2005, 2006, and 2008 tax years. The 2007 false return reflecting a multi-million dollar refund due to respondent was mailed after the IRS agents contacted respondent. Respondent did not receive the requested refunds. Respondent knowingly and intentionally presented false claims to the IRS, which is an agency of the United States.

In February 2014, United States District Judge Robert James sentenced respondent to serve 28 months in a federal penitentiary, followed by three years of

3

supervised release. The sentence imposed by Judge James was a downward departure from the recommended sentencing guidelines of 51 to 60 months incarceration. Among other reasons for his ruling, Judge James stated that a departure was appropriate because "this is the type of exceptional case under which the guideline determination overestimates the seriousness of the defendant's action." He continued:

> … [T]he Court takes fraud of any kind very seriously. But this truly is an unusual case where it is clear that the defendant's attempts were highly unlikely, if not impossible, to succeed. The extreme difference between the attempted and actual loss in this case, the defendant's clearly irrational actions in continuing to pursue a fraud of another $3 million when he was under investigation indicate that the guideline range is inappropriate in this case.

## DISCIPLINARY PROCEEDINGS

In October 2013, the ODC filed formal charges against respondent alleging that his conduct violated the following provisions of the Rules of Professional Conduct: Rules 8.4(a) (violation of the Rules of Professional Conduct), 8.4(b) (commission of a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Respondent, through counsel, answered the formal charges, essentially admitting to the alleged rule violations. However, he argued that the appropriate sanction for his misconduct is a sanction less than disbarment. This matter then proceeded to a formal hearing.

*Hearing Committee Report*

Following the hearing, the hearing committee summarized the relevant testimony as follows:

Respondent testified that he was at an all-time low period in life when he committed the crime to which he pleaded guilty. As a result of years of physical and emotional abuse by his wife, he was depressed and anxious. He was also going through a divorce, owed back taxes, was maintaining two households, and was very angry at the government. For a short time, he received treatment for his depression through counseling with Dr. David Govener and through the use of antidepressants prescribed by Dr. Thomas Williams. Respondent testified he does not feel he is currently suffering from depression or anxiety. He also testified that he never anticipated receiving any refunds from his filing of fraudulent tax returns. He served eighteen months in prison, lived in a halfway house to serve 3.2 months of his sentence, and served 2.8 months of house confinement to conclude his sentence. He also consented to his interim suspension from the practice of law on February 26, 2014.

Dr. Govener was accepted as an expert in marriage and family therapy. He testified that he and respondent initially had a professional acquaintance that developed into a friendship. In 2008, he became concerned about respondent's mental health because of anti-government statements respondent was making, and he suggested respondent engage in counseling. He counseled respondent for some time and referred him to Dr. Williams for a prescription for antidepressants. Dr. Govener testified that respondent suffered from a major depressive disorder with psychotic features. However, this diagnosis has resolved, and respondent is highly unlikely to repeat the type of behavior that led to the formal charges against him. Finally, Dr. Govener testified that respondent is no longer in treatment with him.

Attorney Robert Lee testified that he and respondent shared office space as practicing attorneys for approximately twenty years. Mr. Lee testified that respondent went above and beyond to help his clients with all aspects of their lives during his representation. He also testified that, on several occasions, respondent

came to his house late at night or showed up at the office with evidence he had been the victim of physical abuse.

Two of respondent's former clients testified about his good character. One of the former clients testified that he and respondent developed a friendship and that they attend religious retreats together.

After considering this testimony and the other evidence in the record, the committee made the following factual findings:

On April 19, 2013, respondent pleaded guilty to one count of filing false, fictitious, or fraudulent tax claims. The factual basis of this charge was that respondent filed four income tax returns claiming he received Forms 1099-OID from several banks when he, in fact, did not. The false tax returns sought refunds totaling $9,783,693. Respondent's conduct did not result in financial gain, and he suffered from major depression at the time of the offense.

Respondent acknowledged that his conduct violated Rules 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct. The committee determined that respondent's guilty plea and the plea agreement are proof of his violation of the Rules of Professional Conduct. The committee further determined that respondent intentionally violated duties owed to the public and caused harm to the legal profession because of the publicity of his transgressions. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined the baseline sanction is disbarment.

In aggravation, the committee found a prior disciplinary record, a dishonest or selfish motive, and substantial experience in the practice of law (admitted 1986). In mitigation, the committee found the following: personal or emotional problems, full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, delay in the disciplinary proceedings, imposition of other penalties or sanctions, and remorse. Additionally, the committee considered as a

mitigating factor the fact that respondent did not violate a duty to or harm any clients.

After also considering this court's prior jurisprudence addressing similar misconduct, the committee recommended respondent be suspended from the practice of law for three years, retroactive to the date of his interim suspension. The committee further recommended that respondent execute a contract with the Judges and Lawyers Assistance Program ("JLAP") prior to being reinstated to the practice of law.

Neither respondent nor the ODC filed an objection to the committee's report or recommendation.

*Disciplinary Board Recommendation*

After reviewing this matter, the disciplinary board determined that the hearing committee's factual findings do not appear to be manifestly erroneous and are supported by the record. The board also determined the committee correctly applied the Rules of Professional Conduct, and the record supports the conclusion that respondent violated Rules 8.4(a), 8.4(b), and 8.4(c).

The board then determined respondent intentionally violated duties owed to the public by engaging in criminal conduct. His criminal conduct also harmed the public's perception of the legal profession. The board agreed with the committee that the baseline sanction is disbarment.

The board also agreed with the aggravating factors found by the committee. Additionally, the board found illegal conduct to be an aggravating factor. The board agreed with all of the mitigating factors found by the committee except a delay in the disciplinary proceeding. Explaining that the delay was caused by the parties' pursuit of consent discipline, the board reasoned that respondent should

7

not receive the benefit of a mitigating factor caused by a separate proceeding in which he voluntarily agreed to participate.

After also considering this court's prior jurisprudence addressing similar misconduct, respondent's lengthy disciplinary history, and the fact that he attempted to fraudulently obtain millions of dollars in tax refunds, which had no relation to money he had earned, the board recommended respondent be disbarred.

Respondent filed an objection to the board's report and recommendation. Accordingly, the case was docketed for oral argument pursuant to Supreme Court Rule XIX, § 11(G)(1)(b).

## DISCUSSION

Bar disciplinary matters come within the original jurisdiction of this court. La. Const. art. V, § 5(B). When the disciplinary proceedings involve an attorney who has been convicted of a crime, the conviction is conclusive evidence of guilt and the sole issue presented is whether respondent's crimes warrant discipline, and if so, the extent thereof. Supreme Court Rule XIX, § 19(E); *In re: Boudreau*, 02-0007 (La. 4/12/02), 815 So. 2d 76; *Louisiana State Bar Ass'n v. Wilkinson*, 562 So. 2d 902 (La. 1990). The discipline to be imposed in a given case depends upon the seriousness of the offense, the circumstances of the offense, and the extent of the aggravating and mitigating circumstances. *Louisiana State Bar Ass'n v. Perez*, 550 So. 2d 188 (La. 1989).

Here, respondent stands convicted of one count of making false, fictitious, or fraudulent claims to the IRS, arising out of his ill-advised effort to employ an "OID scheme" to claim more than $9.7 million in tax refunds over four years. In connection with his criminal conviction, respondent has acknowledged violating Rules 8.4(a), 8.4(b), and 8.4(c) of the Rules of Professional Conduct.

8

Through his guilty plea, it has been established that respondent knowingly presented a false claim to the IRS. The nature of respondent's crime calls for a baseline sanction of disbarment under the ABA's *Standards for Imposing Lawyer Sanctions*. In light of the aggravating factors present, especially respondent's prior disciplinary record, we find that a downward deviation from the baseline is not warranted.

Accordingly, we will adopt the disciplinary board's recommendation and disbar respondent, retroactive to the date of his interim suspension.

**DECREE**

Upon review of the findings and recommendations of the hearing committee and disciplinary board, and considering the record, briefs, and oral argument, it is ordered that Francis C. Broussard, Louisiana Bar Roll number 17259, be and he hereby is disbarred, retroactive to February 26, 2014, the date of his interim suspension. His name shall be stricken from the roll of attorneys and his license to practice law in the State of Louisiana shall be revoked. All costs and expenses in the matter are assessed against respondent in accordance with Supreme Court Rule XIX, § 10.1, with legal interest to commence thirty days from the date of finality of this court's judgment until paid.

SUPREME COURT OF LOUISIANA

No. 2016-B-1441

IN RE:  FRANCIS C. BROUSSARD

ATTORNEY DISCIPLINARY PROCEEDING

**Hughes, J., dissenting.**

I would impose a three year suspension rather than disbarment.